GEORGE C. GARRISON V. TERRITORY OF OKLAHOMA.

(Filed March 4, 1904.)

1. CONTINUANCE—Matter of Discretion. The granting or refusal of a continuance in a criminal case is largely a matter of discretion with the trial court, and this court will not reverse the trial court on the decision of a matter which rests entirely in the sound discretion of the court, unless it is shown that there has been an abuse of discretion.

2. CHANGE OF VENUE—Waiver of Notice. Under chapter 25, article 1 section 1, laws of 1903, when the records show that at the time of taking up the motion for change of venue, the county attorney was present in open court and did not raise the question of notice, and when the record shows that the motion was taken up without objection on his part, and where no demand was made by him for time to file counter affidavits, and no request on his part for leave to examine, under oath, the signers of the petition, the trial court should, and this court will treat the notice required by this statute, as waived, and where the affidavits presented in support of the motion reasonably established the fact that the minds of the inhabitants of the county in which the case is pending, are so prejudiced against the defendant that a fair and impartial trial cannot be had therein, the court should grant the application.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before John H. Burford, Trial Judge.*

*Chambers & Weaver* and *Howard & Ames,* for plaintiff in error.

*Ralph J. Ramer, County Attorney, J. L. Brown* and *Selwyn Douglas,* for defendant in error.

STATEMENT OF FACTS.

At the November term, 1902, of the district court, held in and for Oklahoma county, an indictment was returned by the grand jury of that county, charging the defendant, one George G. Garrison, with the crime of rape, committed upon the person of one Lucy Patt, on the 26th day of February,

1903. In said indictment one Ann Wynn, was therein charged jointly with the said George Garrison, with the crime of rape, by being feloniously present, and aiding, abetting and protecting the said George Garrison, in the felony and rape aforesaid. Said indictment was regularly returned and presented in open court by the foreman of the grand jury in the presence of the grand jurors, and filed by the clerk of the said district court, February 23rd, 1903. To this indictment the defendants filed a demurrer, which was by the court overruled, and exceptions saved by the defendants. The defendants then, each for themselves in open court, entered a plea of not guilty to the indictment. On the 13th day of April, 1903, being one of the regular days of the April term, 1903, of said court, the defendants present to the court their motion for a change of venue, which motion is overruled by the court, and exception allowed to the defendants. Said defendants then present to the court their motion for a change of judge, which, after being considered by the court, is granted. At 7 o'clock, P. M., of April 13th, 1903, the district court of Oklahoma county convened, pursuant to adjournment, the Honorable John H. Burford presiding. Whereupon the defendants present their motion for a continuance, which is argued by counsel, and the court overruled said motion, to which the defendants except. Thereupon said defendants ask for a severance, which request is granted by the court, and the trial of the case against the defendant, George G. Garrison, is first ordered. And on the said 13th day of April, 1903, in the district court of Oklahoma County, Oklahoma Territory, a jury was duly empaneled and sworn, and proceeded to the trial of said cause. Evidence was heard, the jury instructed as to the law, and arguments of counsel

heard, and on the 15th day of April, 1903, the jury returned into said court a verdict, finding the defendant, George G. Garrison, guilty as charged in the indictment, of rape in the first degree. The defendant thereupon filed his motion for a new trial, which motion was by the court overruled, and exceptions saved by the defendant. Judgment and sentence were pronounced by the court upon the verdict on the first day of May, 1903, being one of the judicial days of the April term, 1903, of the district court in and for Oklahoma county, sentencing the defendant to the penitentiary, at Lansing, in the state of Kansas, for a term of ten years, to which judgment and sentence the defendant excepted, and brings the case here for review.

Opinion of the court by

IRWIN, J.: The first assignment of error presented by counsel for plaintiff in error is, that the coming of Chief Justice Burford to try the case, was irregular. Now it does not make so much difference whether his coming was regular or irregular, if it was legal and in accordance with the provisions of law. The law provides that the supreme court, if in session, shall assign a judge to try the cause, when the presiding judge is disqualified, and when said supreme court is not in session, this duty shall be performed by the chief justice. Now if this duty was performed in accordance with the provisions of the law, it will make no difference whether it was done rapidly or slowly. When the defendant made the necessary application for a change of judge on the grounds of bias and prejudice of the presiding judge, all that he had the right to expect was, that a trial judge should be provided who was free from the objection urged for a change.

It is the purpose of the law to remove the charge of bias and prejudice, and not to occasion unnecessary delay. This is the intention of the law, notwithstanding the intention of the person moving for a change, may be otherwise. So the complaint in the counsel's brief that the coming of the chief justice was too rapid, and that, "almost without interruption the chief justice took the bench" comes from them with very bad grace. But it is complained that no order was made assigning the chief justice to try the case. Now, that contention would have great weight if it was borne out by the facts. It is true, that the case-made as originally prepared, served, signed and filed in this court, omits this order, but we take the true rule to be that in matters of this kind, affecting the jurisdiction of the trial judge, that when the law is actually complied with, and the order assigning a judge to try the case, either by the supreme court while in session, or by the chief justice when not in session, is properly filed in the office of the clerk of the supreme court, and in the office of the clerk of the district court, where the case is pending, then this court will take judicial notice of its own orders; whether the same is incorporated in the case-made or not. The records of the supreme court of this territory, and the certificate of the clerk thereof, shows that on January 6th, 1904, the following motion was made and sustained by the supreme court.

"In the Supreme Court of Oklahoma.

"*George C. Garrison, plaintiff in error v. The Territory of Oklahoma, defendant in error.*

"Motion suggesting diminution of the record."

"Now comes the defendant in error, the Territory of Ok-

lahoma, and suggests a diminution of the record in the above entitled cause and a correction thereof by adding thereto a copy of the order of the supreme court made on the 13th day of April, 1903, and which was on file in the Oklahoma county district court at the commencement of the trial, assigning Chief Justice John H. Burford to try causes in the district court of Oklahoma county in which B. F. Burwell, the regular presiding judge in said county had been and was disqualified. A certified copy of said order is hereto attached, marked exhibit "A," and is hereby made a part of this motion and suggestion.

"RALPH J. RAMER, county attorney,

"SELWYN DOUGLAS, attorney for deft. in error.

"In the Supreme Court of the Territory of Oklahoma. In Vacation.

"Whereas, It has been made to appear that a change of judge has been ordered in a number of causes now pending in the district court of Oklahoma county, in the third judicial district, and that the Honorable B. F. Burwell, presiding judge of said court, is disqualified from trying said causes; and it further appearing that the said presiding judge will be absent from his district on official business during the present term of the district court of said county,

"It is now hereby ordered, that Honorable John H. Burford, chief justice of the supreme court of the Territory of Oklahoma, be, and he is hereby designated to try, hear and determine any of said causes, now pending in the district court of Oklahoma county, and wherein a change of judge has been ordered, and he is further designated to hold the district courts of the said third judicial district during the absence of the regular presiding judge from his said district, and to try, hear and determine all matters which may properly come before said court · or judge. It is further ordered: That the clerk transmit a duly certified copy of this order, attested by his official signature, and the seal of said supreme court, to said Chief Justice Burford, the clerk of the

first judicial district of said territory, and the district courts of said third district.

"In witness whereof, I have hereunto set my hand, this 13th day of April, 1903.

"JOHN H. BURFORD, chief justice,

"Attest, BENJ. F. HEGLER, clerk supreme court."

"[SEAL.]"

"Territory of Oklahoma, Oklahoma County. ss.

"I, B. D. Shear, clerk of the district court in and for Oklahoma county, and Territory of Oklahoma, do hereby certify the within to be a true copy of a certified copy of an order made in vacation by the Honorable John H. Burford, chief justice of the supreme court of said territory, on the 13th day, certified to by Benj. F. Hegler, clerk of the supreme court, and filed in this office on the 15th day of April, 1903.

"Witness my hand and seal this 7th day of August, 1903.

"B. D. SHEAR, Clerk.

"By WILL H. CLARK, Deputy."

"[SEAL.]"

Said motion is endorsed as follows:

"No 1360. In the supreme court. *George G. Garrison, plaintiff in error v. Territory of Oklahoma, defendant in error.* Motion suggesting diminution and correction of record. Ralph J. Ramer, county attorney, and Selwyn Douglas, for defendant in error. Filed August 11, 1903, Benj. F. Hegler, clerk supreme court, by Florence N. Weirick, deputy. No. 1360. We hereby acknowledge the service of notice of this motion and the filing therof by copy, this 8th day of August, 1903. H. H. Howard, for George G. Garrison, plaintiff in error—Filed August 11, 1903, Benj. F. Hegler, clerk supreme court, by Florence N. Weirick, deputy."

"United States of America, Territory of Oklahoma, ss.

"In the Supreme Court.

"I, Benj. F. Hegler, clerk of the supreme court of the Territory of Oklahoma, do hereby certify that the annexed

and foregoing is a full, true and complete copy of the motion suggesting diminution of the record, in the supreme court of the territory, in cause 1360, entitled, *Geo. G. Garrison v. Territory of Oklahoma,* (which motion was sustained by said supreme court) (on January 6, 1904), and of the order designating Chief Justice Burford to try said cause in the Oklahoma county district court.

"In witness whereof, I hereto set my hand and affix the seal of said supreme court, at Guthrie, this 22nd day of January, 1904.

"BENJ. F. HEGLER, clerk supreme court."

"[SEAL.]"

This proceeding would cure any omission there might be in the case-made as to the order assigning Chief Justice Burford to try the cause. We think the certificate of the clerk of the district court of Oklahoma county, that the order was filed in his office on the 13th day of April, 1903, being a certificate of a sworn officer of the law, under the seal of the court, imports verity, and establishes the facts therein stated, notwithstanding that such order, through inadvertance or otherwise, is omitted from the case-made. So we think there is nothing in this contention of plaintiff in error's counsel.

Another assignment of error is that the trial court overruled defendant's application for a continuance. We have examined the application, and the affidavits in support thereof, and while they do not show the utmost of diligence, to procure the attendance of the witnesses, they do show that considerable diligence was used, and much effort put forth to ascertain the names of the witnesses whom the defendant, at the time of the alleged crime, only knew by sight. It appears that he had subpoenas issued for them by description,

and by the names of John Doe and Richard Roe, which was the best he could do under the circumstances. The affidavits also show that he gave such knowledge of the witnesses as he had to the officers to whom he gave the subpoenas. He also employed others to look up these witnesses. He sent messengers to the Frisco depot to inquire as to the name and whereabouts of this conductor, and these brakemen, whom he desired as witnesses, and, on the whole, we think these affidavits show a reasonable exercise of diligence, but, it is urged that the testimony of these witnesses, if procured, would be merely cumulative, and hence the application for a continuance was properly refused. This is no doubt to a certain extent true, but this case in many respects is not an ordinary case.

There is no fixed and arbitrary rule by which a trial judge is to weigh, measure and determine the character, weight, relevancy and effect of testimony, but in this particular, each particular case must, to a large extent, depend upon the particular facts and circumstances surrounding it. Evidence which would be merely cumulative, and be of but little weight in one case, might be of great importance in another, depending upon the surroundings in the case. As for the act of illicit intercourse, it is admitted. It is also conceded that it was in a house of prostitution. In the very nature of things the witnesses would be taken largely from prostitutes and libertines. In this case an examination of the record shows that almost all of the witnesses for the defense are of a very low order or morals; they are either prostitutes or gamblers. The defendant was a gambler. His past life had not been such as to recommend him to the favor-

able consideration of a jury. His witnesses, from the surroundings of the case, of necessity, were drawn from among gamblers, pimps and prostitutes. Such law abiding men as our juries are composed of in this country do not look with favor on this class of people, or listen with much confidence to their testimony. Of one whose life is so besmirched when charged with crime, better testimony is required than in ordinary cases. That natural instinct of the honest mind, and the natural impulse of the mind and conscience of a good man, that the character and conduct of the defendant was such that he should be punished on general principles, would be so strong in this case, and is too well established in human character, too deeply rooted to be overcome by reference to legal maxims, or the testimony of gamblers, pimps, and prostitutes. In such a case only the intervention of this court, or the production of at least semi-creditable corroborating testimony, would be sufficient to overcome the perfectly natural, but unlawful impulse, that he deserved punishment.

Under the provisions of our statute, 1893, section 4863, the statute should be liberally construed, with a view to promote its objects and in furtherance of justice. The law has no graver or more highly important object, than that no one, no matter how dark and suspicious the surroundings may look, shall be punished for a crime of which he is not guilty. In placing the accused where he must rely upon the testimony, much of which, in the very nature of things, will not be likely to be believed, when more creditable testimony is accessible, much chance is taken that the verdict will not be a true one. These affidavits show that the defendant recently, before the filing of the application for a continuance, and the calling of

the case for trial, has come into possession of knowledge that will lead, on investigation, to the procuring of this testimony. The jury, being the sole judges of the credibility of the witnesses, it would certainly seem that the testimony of these men, who were holding responsible positions, such as conductor and brakemen for a railroad, and in this way were taken from the category of pimps and gamblers, and would have better standing for truth and veracity than prostitutes, would be of great importance to the jury in passing upon the question of the guilt or innocence of the defendant. So, it would seem, that in the exercise of a sound and wise judicial discretion the safer course for the trial court would have been to have granted the continuance, and given an opportunity to procure the attendance of these witnesses, but, as this was a matter resting largely within the sound discretion of the court, we do not feel at liberty to say that this discretion has been abused, or that this error, if error it is, is of sufficient importance, in and of itself, to reverse the case.

Another assignment of error is that the evidence fails to sustain the verdict of the jury, and consequently the court erred in overruling the motion for a new trial on these grounds. We are free to say that on examination of this entire record, we do not feel that the testimony is of that character, or of that degree of certainty, to be entirely satisfactory, and such as would leave in the minds of a jury no possible doubt of the defendant's guilt, in manner and form as charged in the indictment. The crime charged is of that atrocious nature that it shocks the sensibilities of all good people; it is so loathsome and abhorrent to decent people, that we doubt very much whether any human punishment

can be devised adequate therefor; but the very enormity of the crime is the more reason why the proof should be clear, convincing and certain to the highest degree, and so far as possible of a character above reproach.   In the language of Lord Hale, "This is an accusation easily made, hard to be proved, and still harder to defend against, by one ever so innocent." The conduct of the prosecuting witness, as detailed by herself, is not such as to meet the approval of respectable and virtuous people.   On page 45 of the record she admits that she left home in company with her sister and her uncle at about eight o'clock, went to a saloon and drank beer and wine.   She must have been there from three to four hours, as she says she did not reach Big Ann's place until about half past eleven or twelve o'clock.   At page forty-nine of the record she was asked this question, "Did you know when you went into this house, what kind of a house it was you were going into?" Her answer was: "Yes sir, I seen when I was in there what it was." At page forty-seven, when asked "What was the first thing you did when you got into Big Ann's place?" she answered, "We go and set down there, Big Ann brought two glasses of beer and gave them to me; I drank one and gave one to my sister." A truly good and virtuous woman would not have gone into the saloon and drank beer and wine and remained there until eleven or twelve o'clock at night, a virtuous woman would not have knowingly gone to Big Ann's, and if by fraud or malicious design, she was persuaded inside the door, she would not, when she knew the character of the place, have sat down and drank intoxicating liquors.   It is true these girls were Germans, and the custom of beer drinking is not looked at in the same way, or regarded in the same light as among other na-

tionalities, but the instinct of virtue and its preservation, is as strong with them as among any people in the world. And again, at page fifty-four, in describing what was done to her, she uses expressions that are not the usual and natural language we expect to hear from the lips of a virtuous woman, when she says, "They done business." The proof further shows that neither of these girls sought an opportunity to complain, and only did so when confronted by the police, and made to understand that an explanation was necessary. Another feature of the case as detailed by the prosecuting witness, shakes our faith in humanity, and would make us believe in the doctrine of total depravity; there were at least sixteen or eighteen persons in that room; eleven of them were men, one a railroad conductor, two railroad brakemen, two members of the fire department, one a groceryman, one a bartender, and the rest gamblers; all full grown men, with perhaps mothers, wives and sisters; to think that of all that number there was not one who would answer to the cry of help, is to attribute to mankind collectively a brutality far below the brute creation.     Had eleven dogs been present in that house that night, not blooded, well bred, well trained dogs, but only common curs, among the pack would have been at least one that would have entered a protest and given the alarm when a screaming, struggling, fighting girl was being carried to her forcible defilement.     And as to the actual details of what took place there, there is testimony entirely at variance, one with another; testimony which in the very nature of things, cannot on both sides be true.     True it is the testimony of the defense is largely confined to persons of very low moral character and standing, of gamblers, pimps and prostitutes; so, on the whole we think the testi-

mony is not entirely, and as a whole, that, which to say the least, would produce the highest degree of certainty; but the reconciling of this testimony and the determining of its weight and credibility was entirely within the province of the jury, they had an opportunity to see the witnesses face to face, hear their story, observe their manner on the stand, and had many advantages in determining truth and detecting falsehood, which we do not have, and for this reason, we do not feel at liberty to say that the evidence does not reasonably sustain the verdict or to disturb the findings of the court and jury on this ground.

We come now to a consideration of that which in our judgment is the most important and the most serious assignment of error in this record, that is that the court erred in overruling defendant's application for a change of venue.

We have examined the affidavit filed for a change of venue. This application was filed on the 13th day of April, 1903, and at that time chapter 25 of the laws of 1903, relating to changes of venue, was in force, and was the law governing the case. A comparison of this act of 1903, with the previous acts of the legislature of the Territory of Oklahoma, on this subject, to-wit: The act of 1893, and the act of 1895, shows that the intention of the legislature was that when the requirements of the law of 1903 had been complied with, the act was mandatory in its character. The act of 1893 on this subject contains this langauge:

"The court may in its discretion award or refuse the change. The order shall be reviewable on appeal."

The statutes of 1893, section 5138, and the laws of 1895, page 198, contain this language:

"If the offense charged in the indictment be punishable

with confinement in and for a term less than life, in the territorial prison, and it be shown to the court by the affidavit of the accused, corroborated by five disinterested persons, that a fair and impartial trial can not be had in the county, the court may, in its discretion award or refuse the change. The order shall be reviewable on appeal."

It will be seen that by these acts the matter is made entirely a matter of discretion with the trial court, while it is reviewable on appeal. It is a well recognized principle of law that an appellate court will not reverse the trial court on a question which is entirely in the discretion of the trial court, unless it can be clearly shown that there has been an abuse of such discretion. But when we come to compare these acts with the act of 1903, which was the act governing and in force at the time of this trial, we find that different language is used. The language of the act of 1903, at page 221 of the session laws of 1903, contains this language:

"And if it be made to appear by the affidavits and examination of witnesses, that a fair and impartial trial cannot be had in the county, a change shall be granted and the order made by the court."

This act provides further that the county attorney may introduce counter affidavits to show that the persons making affidavits in support of the application are not credible persons, and that the change is not necessary, and to examine the witnesses in support of such application in open court in regard to the truth of such application. The provisions of this act are, that the allegations in the petition for the change of venue must be supported by the affidavit of at least three credible persons who reside in said county, and the act by its terms applies to any criminal case pending in

the district court, and it provides that the application must be made at some time before the trial is begun, and must be on the application of the defendant. It is urged by counsel for defendant in error that the trial court overruled this application for a change of venue on the grounds alone that it was not shown by such application or in any other way, that notice was given of the application to the county attorney. Now, while it is true that this act of 1903 provides that reasonable notice of the application shall be given to the county attorney, and while it is one of the material and necessary steps to be taken, in procuring a change of venue, we think that if the affidavit or petition for a change of venue is in substantial compliance with the requirements of the law, and makes out such a showing as the law requires, then it is sufficient to authorize the granting of the change of venue. In determining what is a substantial compliance with the law, we must consider what are the material provisions of the act, and in determining what are the material provisions of the act we should take into consideration the purposes to be served by the various provisions of the act, and what object was to be accomplished thereby. Now the purpose of the notice to the county attorney, in the provisions of this act, could have been for no other purpose than to give him the right to be present at the hearing of the motion, and to make such showing as the provisions of the act authorize; that is, to introduce counter affidavits, to show that the persons making the affidavits in support of the application were not credible persons, or that the change was not necessary. This would be the only two purposes for which counter affidavits could be used according to the provisions of this act. Another object of notice would be to give the county attorney

opportunity to be present and examine the witnesses in support of such application in open court, to test the truth of the allegation they have made in the application. Now this is a positive right which is given to the territory, to be exercised through its legal officer, the county attorney, but we think it will hardly be contended that it is a right which could not be waived. We think it will be conceded that such right could be waived on the part of the territory. Now such waiver may be as effective by silence or acquiescence, as by positive, affirmative acts. The record in this case shows at page eight of the case-made, that at the time this motion for a change of venue was presented and argued to the court, that the county attorney of Oklahoma county was present in open court, and the record does not show that any objection was made to the taking up of the motion at that time, or any objection urged on account of the lack of notice. Now if the county attorney was present when this petition for a change of venue was presented to the court, was there in open court representing the territory, fully aware of all that was going on, allowed said motion to be taken up, argued to the court, and made no demand for time to prepare and file counter affidavits, as required by this act, and made no application to examine the signers of that petition under oath, can it be said that he did not waive that right in fact? Under the provisions of this act there would be no doubt that the court would be justifiable in refusing to hear said motion in the absence of such notice, but where the object and purpose of such notice was subserved, and where the county attorney not only had an opportunity to be, but was actually present, in open court, and allowed the proceedings to go on without objection, and made no request of the court to be allowed

45—Vol 13

to present anything in opposition to such petition or affidavits, it seems to us that both the trial court and this court should treat the right of notice as waived. Now this petition for a change of venue purports to be signed not only by the three persons required by the provisions of the act of 1903, but seems to be signed by seven persons, who purport to be citizens of Oklahoma county, and persons who are familiar with and know the facts contained in said affidavit, and some of these signers are known to the writers of this opinion, others are not; but, when the county attorney, under the law, has a right to make a showing that these persons are not credible persons, and he fails to make that showing, we think the presumption of law would be that they are credible persons, and credible citizens of the county. This affidavit for a change of venue, standing alone, unattacked and unimpeached, it would seem to us makes out a *prima facie* case entitling the defendant to the change of venue asked for. It seems to us that where the county attorney, as in this case, was present in open court, and either neglected or refused to make any showing in opposition to the application for a change of venue, when he had the undoubted right so to do, and would no doubt have been afforded an opportunity on application to the court, he could not now be heard to say that the affidavit does not sufficiently show the facts therein set forth.

The Arkansas supreme court in 1869, in the case of *Edwards v. The State*, 25 Ark. 444, say:

"On application in due form for a change of venue in a capital case, made before the jury are sworn, and setting forth that the minds of the inhabitants of the district are so prejudiced against the defendant that a fair and impartial trial

cannot be had, the defendant becomes entitled to the change of venue as a matter of right."

In California, under penal code section 1035, providing:

"That if the court, on an application for a change of venue shall be satisfied that the defendant's representation is true, an order must be made for the removal of the cause to a county free from such objection." Held, "that the granting or refusing of an application for a change of venue was not a matter of mere discretion of the trial court, but must be warranted by the facts disclosed by the record." (*People v. Yoakum,* 53 Cal. 566.)

This decision was rendered in 1879, and the same doctrine was reiterated in 1890, in the case of *Lowery v. Hogue,* 85 Cal. 600, 24 Pac. 995.

The Illinois supreme court, in a number of cases have said:

"A change of venue in a criminal prosecution, and the granting or refusing of an application for such change, is not within the discretion of the trial court, but is a matter to which the defendant is entitled as a matter of right." (*Clark v. The People,* 2 Ill [1 Scam] 117; *Gray v. The People,* 26 Ill. 344; *Raffert v. The People,* 66 Ill. 118.)

The Kentucky supreme court, in the case of *Johnson v. The Commonwealth,* in discussing a statute which provides:

"And the court shall on said motion hear all witnesses that may be produced by either party, and from the evidence determine whether or not the applicant is entitled to a change of venue." "Held, that when an application for a change of venue in a criminal cause is made in good faith, and the evidence shows that there are reasonable grounds to believe that the defendant cannot have a fair trial in the county where the offense is committed, it is the duty of the court to grant such change."

In the case of *Higgins v. Commonwealth,* 94 Ky. 54, 21 S. W. 231, where the accused filed his petition for a change of venue and the affidavits of two credible witnesses, as required by gen. stat. chap. 12, art. 4 sec. 2, as amended by act of April 1st, 1880, providing that the application must be made in open court and the court shall on said motion hear all witnesses that may be produced by either party, and from the evidence determine whether or not the applicant is entitled to a change of venue: Held, that where no other testimony was offered by either party, the court had no discretion, and the change of venue should have been granted.

The supreme court of Louisiana, in the case of *State v. Train,* 23 La. Ann. 710, was under the act of 1868, providing:

"That on application of the attorney general or the district attorney, to a judge of any criminal court, the judge shall have full power to change the venue in a criminal prosecution when, in his judgment, a competent jury of the parish cannot be had; a judge is obliged to grant such change on application in regular form."

The supreme court of Missouri, in the case of *Freleigh v. The State,* 8 Mo. 606, a case decided in 1844, say:

"Under rev. code, page 498, entitling defendant in a criminal case to a change of venue, for certain causes on a petition supported by affidavit of two respectable witnesses, if the requirements of the statute were complied with, the court had no discretion to refuse the same, but it was its imperative duty to grant it."

While under the provisions of this act it is necessary that it in some way be made to appear that a fair and impartial trial cannot be had in the county, before a change shall be granted, and the order made by the court, under these pro-

visions it· is necessary that the trial court should have before him evidence which would reasonably sustain the proposition that the prejudice in the county existed to that extent that a fair trial could not be obtained. But, this like every other judicial decision of the trial court should be based upon the evidence before the court. It would not be contended that the court, even in the exercise of his discretion, would have a right to presume that the facts stated in the affidavit were not true, or to act upon any personal or individual knowledge he might have, or any opihion he might have, as to what the evidence might subsequently show; but, in determining the question of the truth or falsity of the charge contained in the application for a change of venue, and the affidavits in support thereof, he should be governed by a fair and candid examination and investigation of the evidence presented before him; and in this case, this affidavit setting forth that the prejudice existed in the county to the extent charged in the affidavit, being supported by the names of seven apparently respectable men, who were residents of the county, and this being uncontradicted when the opportunity was afforded the county attorney to do so, nothing being offered in opposition thereto, it would certainly seem to us that in the exercise of a sound discretion, even if the matter was one within the discretion of the trial court, this application for a change of venue should have  been granted.

And when we consider the language of the three acts of the legislature, the acts of 1893, and 1895, in both of which acts the matter is made to rest in the discretion of the court, and then the act of 1903, as compared thereto,

where it is made obligatory, and the language of the last act is, that the change shall be granted, it seems to us that where the showing is made as required by this act, that the only discretion in the mind of the court is. to determine whether from all the affidavits introduced, and all of the evidence before him, the facts have been established by a preponderance of the evidence, and when he arrives at that conclusion he then has no further discretion in the matter, but the requirements of the act are mandatory that he shall grant the change of venue. Under the circumstances as developed in the record in this case, it seems to us that the act of the court in refusing the change of venue was error, and such error as should reverse the case. As this right to a change of venue, under the forms and conditions prescribed by the act of 1903, is a statutory provision, designed for the protection of the defendant, and is a right guaranteed to him by law, this right is as sacred to one man as to another, and no matter how guilty the man may be, his guilt can only be legally determined in accordance with the provisions and forms of law. The duty of the court is to protect and preserve to every man, guilty or innocent, all of his legal rights, and any deviation from this by the court is a dangerous innovation, and one which necessarily must lead to dangerous results.

Even the desire to enforce the criminal law, and to punish persons guilty of crime will not be indulged in to the extent of the sacrifice of constitutional or statutory rights guaranteed to the defendant.

For the reasons herein expressed this case is reversed and remanded to the district court with instructions to grant a new trial.

Burwell, J., who passed upon some of the motions in the case, in the court below, not sitting; Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.