### GEORGE ELMO VANCE V. TERRITORY.

No. 114.    Opinion Filed November 27, 1909.

(105 Pac. 303.)

1.    **CONTINUANCE—Discretion of Court—Appeal—Review.** The granting or refusal of a continuance in a criminal case is largely a matter of discretion of the trial court, and this court will not reverse a trial court on a decision of a matter which rests in the sound discretion of the court, unless it is shown that there has been an abuse of discretion.

2.    **CONTINUANCE—Motion—Requisites.** A motion for continuance must allege the residence of the witness. if the residence is known to the party, and the probability of procuring his testimony within a reasonable time.

3.    **TRIAL—Indorsing Names of Witnesses on Indictment.** Under section 5352, Wilson's Rev. & Ann. St. 1903, the court may permit the names of additional witnesses for the prosecution to be indorsed on the indictment after the jury is impaneled.

(Syllabus by the Court.)

*Error from District Court, Canadian County; John H. Burford, Judge.*

George Elmo Vance was convicted of murder, and brings error.    Affirmed.

The plaintiff in error (hereinafter referred to as the "defendant") was indicted in Roger Mills county, territory of Oklahoma, at the April term, 1906, charged with the murder of Walter Sheehan.    At the September term, 1906, a change of venue was granted to Canadian county, Okla. T.    At the November term, 1906, of the Canadian county district court, the case was continued on application of the defendant.    At the March term, 1907, the defendant was tried and convicted and sentenced to confinement in the territorial prison at hard labor for life.    The facts as disclosed by the record are, substantially, as follows:    The defendant was a barkeeper in the Williams saloon in the town of Sayre.    The deceased, Walter Sheehan, and Henry Mattox became engaged in a quarrel.    The defendant forbade them to fight in

the saloon and stated that if there were any fighting to be done he would do it himself. Mattox left the saloon, but in a short time returned and renewed the controversy with the deceased. They became engaged in a fight, and, while thus engaged, the defendant, using a shotgun, killed the deceased, firing three other shots at a brother of deceased, who was in the room. The defendant claims that, at the time he fired the fatal shot, the deceased was pointing a pistol at him. The case was appealed, and by proper order transferred to this court.

*John B. Harrison, D. B. Welty,* and *S. B. Garrett,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *E. G. Spilman,* Asst. Atty. Gen., for the Territory.

OWEN, JUDGE, (after stating the facts as above). There are 45 assignments of error in this case. The first assignment is expressly waived in the brief filed by counsel for the defendant. The second and third are to the court's overruling a motion for continuance. The fourth, fifth, and sixth are to the action of the court in overruling motions for new trial and in arrest of judgment, and are not insisted on in the brief filed. The seventh to the twenty-fifth, inclusive, are to the instructions given by the court. The twenty-sixth to the thirtieth, inclusive, are to the refusal of the court to give instructions requested by the defendant. The thirty-first is to the action of the court in allowing counsel for the territory to indorse additional names on the indictment after the jury had been impaneled. The thirty-second to the forty-fifth, inclusive, are to the action of the court in ruling on the admissibility of evidence.

We have carefully considered each of these assignments, but do not deem it necessary to copy them all in this opinion. In the brief filed by counsel for the defendant appears this statement:

"It is true that many of the errors of which we complain, taken singly, or standing alone, are seemingly harmless, perhaps are harmless; but we contend there are but few, if any, assignments to which we call the court's attention, but what in a meas-

3 Cr.—14

ure, though in some instances perhaps very slightly, affect the substantial rights of the accused, and but for which the case would not have been brought here."

We agree with counsel in that statement. We have not only considered the assignments separately, but have considered them together, and are driven to the conclusion that the defendant in this case had a fair trial and was not denied any substantial right. We shall first consider the assignments which go to the action of the court in overruling motion for continuance.

The motion in this case was made on account of the absence of witnesses and the inability of the defendant's leading counsel to attend the trial. The granting or refusal of a continuance in a criminal case is largely a matter of discretion of the trial court, and this court will not reverse the trial court on a ·decision of a matter which rests in the sound discretion of the court, unless it is shown that there has been an abuse of discretion. It appears from the record in this case that the defendant asked for a continuance to secure the testimony of Tom Hughes, William Hardesty, Horace Gaither, William Caruth, Ed. Farris, and Frank Autrey. Before passing on the motion, the trial court heard the testimony of the deputy sheriff of Roger. Mills county and the city marshal of the town of Sayre, where the crime was alleged to have been committel. Their testimony was to the effect that William Hardesty and Frank Autrey were unknown. Neither of the witnesses had ever heard of any one by that name, after making a diligent search for them. The witness Ed. Farris had removed to the state of Texas more than a year previous to the date on which the motion was filed. The witness Tom Hughes was known by the officers as an "all-around rounder," and "was at home wherever his hat is." The court ordered an attachment for the witnesses Caruth, Gaither, and Hughes. Caruth and Gaither were brought in and their testimony heard. It appears from the motion for continuance that the testimony of Hughes, though material to the defendant's defense, was cumulative. The motion for continuance states substantially that Hughes was an eyewitness, as was Gaither. Unless it was made to appear to the trial

court that the testimony of Hughes could, in all probability, be
secured within a reasonable time, and that without his testimony
the defendant would be materially injured or deprived of a sub-
stantial right, there could be no error in refusing continuance.
There is no statement in the motion, neither was there any testi-
mony offered by defendant, to convince the court there was a prob-
ability of securing the testimony of this witness. One of the pro-
visions of the statute with reference to motions for continuance is
that the affidavit must give the residence of the witness, if his
residence is known, and the probability of procuring his testimony
within a reasonable time.

As to that portion of the motion for continuance which refers
to the absence of the principal counsel for defendant, we are of
the opinion that the court did not abuse its discretion in refus-
ing the continuance. It appears from the record that this case
was continued at the November term, 1906, on account of the
absence of John B. Harrison and J. J. Carney, attorneys for the
defendant at that time, and, as that motion alleges, who had
been elected members of the constitutional convention. Mr. Har-
rison resides in the county where the murder was alleged to have
been committed. Mr. Carney resided in the county in which the
case had been moved on change of venue. At that time D. B.
Welty and S. B. Garrett were also attorneys in the case. When
the case came on for trial at the March term, 1907, the motion
under consideration was filed, in which the defendant alleges
that Mr. Harrison had prepared himself to conduct the trial of
the case, and that he had suddenly become ill and was unable to
attend the trial. Mr. Carney, one of the attorneys, on account of
whose absence the case had been continued at the November term,
was present. He was a resident of the county in which the case
was to be tried, and the court was personally acquainted with the
other two attorneys in the case. If Mr. Harrison had been sole
counsel in the case, or if he had been the resident counsel of the
county in which the case was to be tried, and had been employed
to assist in selecting the jury on account of his acquaintance with
the citizens of the county, another condition would be presented,

and we can easily understand how the defendant, in that instance, would be deprived of a substantial right; but no such condition exists here. His three associate counsel had been in the case from the beginning. Mr. Carney was a resident of the county in which the case was to be tried, had recently been elected a member of the constitutional convention from that county, and was presumably acquainted with the citizens of the county from whom the jury was to be selected. The case of *Leslie v. Com.* (Ky.) 42 S. W. 1095, and the case of *Cornelius v. Com.* (Ky.) reported in 64 S. W. 412, cited by counsel for defendant in their brief and relied on as authority for their contention, are not in conflict with our holding here. In the case of *Leslie v. Com.* the Court of Appeals of Kentucky held it was reversible error to permit the commonwealth, against objection, to ask the defendant if he had not been arrested for carrying concealed weapons, and if he had not been arrested for discharging firearms, and, in concluding the opinion reversing the case, uses this language:

"Moreover, the unexpected absence of the appellant's local counsel on the morning of the trial, without any notice to him, would appear to afford ample reason why a continuance should have been granted. For the reasons given, the judgment is reversed."

The local counsel for the defendant in this case was not absent. He was present, and, as the records shows, conducted the defense in the most able manner possible. In the case of *Cornelius v. Com.* (Ky.) 64 S. W. 412, the court said:

"It further appears that this local attorney, who was absent, was the only one of the three employed who had seen and talked with appellant's witnesses, and he alone knew the facts that could be proven in the defense. It further appears that neither of the two present was acquainted with the citizens of Lee county, from whom a jury must be selected to try the case."

No such condition appears in the case at bar. If Mr. Carney had been absent, instead of Mr. Harrison, there would have been greater reason for continuing the case. It seems to us that it was a safe conclusion for the trial court that these three attorneys, who had been in this case from the very inception, knew some-

thing at least of what the witnesses would testify. The defendant was pleading self-defense. It was not a defense that would require any considerable research, such as might have been if the plea had been insanity. Mr. Harrison was in the town where the case was to be tried, and was in easy access of the other attorneys, where they might have ascertained from him the general outline of the case, if they had not already been familiar with it.

The rule is so well settled that the granting or refusal of a continuance, particularly for causes not enumerated in the statute, is a matter largely within the sound discretion of the trial court, and nothing but the abuse of this discretion will warrant the appellate court in interfering with the judgment, that we deem it unnecessary to quote the authorities here.

The case of *State of Kansas v. Grant Sullivan,* 43 Kan. 563, 23 Pac. 645, was one where the defendant had three lawyers. An application was made by the defendant for a continuance on the ground that the counsel who appeared for him at the preliminary examination was unable to be present at the trial, and that he had not had an opportunity to communicate to the other counsel facts material to his defense. The application was not made for the term, but simply to enable the defendant to properly prepare for his defense. There was no showing made as to when the counsel, who had appeared for him at the preliminary examination, would be able to be present in court. The affidavit stated that the counsel was confined to his bed with a broken leg. The syllabus of the case is as follows:

"Where a motion is made for a continuance in a criminal case on account of the absence of one of the defendant's counsel, and it appears that he is represented by two attorneys at the time, it is not material error for the court to overrule the motion."

The application filed by the defendant in this case shows that Mr. Harrison was sick, and there was no showing as to when he would probably be able to appear in the case. The same rule announced by the Kansas court was announced in the case of *Garrison v. Territory of Oklahoma,* 13 Okla. 690, 76 Pac. 182, and

*State v. Parker*, 106 Mo. 217, 17 S. W. 180, citing a great number of authorities.

The objections were taken to each of the instructions given by the court, and we have carefully considered each instruction in the light of the criticism made by counsel in their brief. After a careful consideration of the instructions, we are of the opinion that they clearly stated the law. Counsel complain more particularly of instructions Nos. 4, 8, and 16, which are as follows:

"No. 4. A design to effect death sufficient to constitute murder is inferred from the fact of killing, unless the circumstances raise a reasonable doubt whether such design existed, and such design may be formed instantly before committing the act by which it is carried into execution. Homicide committed with the design to effect death is not the less murder because the perpetrator may have been in a state of anger or excitement at the time."

"No. 8. If the defendant was in charge and had control of the saloon in which the deceased lost his life, and during the time he had such control the deceased and any other person or persons became engaged in an altercation, disturbance, or fight, the defendant had the right to demand peace in his place of business, and to use any lawful means to quiet such disturbance and to prevent the fight; but, in exercising his lawful right, he was not authorized to resort to the use of a deadly weapon to enforce his authority. If he was unable to preserve the peace in his place of business without resorting to the use of deadly weapons, then it was his duty to call upon the officers of the law to protect his rights and to take the combatants into custody. Or, when two or more persons are engaged in a fist fight, or combat, no third person has the right to kill one of such combatants to save the other from punishment or even death. A man is permitted, under proper condition, to take human life in his own necessary self-defense, or in the defense of a member of his family, his parent, or servant; but he is not allowed such right in defense of a stranger, or one not related to him. One may also take the life of another in attempt to prevent a forcible invasion of his dwelling house; but, if he is keeping a business place where the public have the right to go to patronize his business, he has no right to take human life in such a place except to preserve his own life, or to prevent a felony being committed against his property in said place of business."

"No. 16. By reasonable doubt is meant an actual, substantial doubt, arising out of a fair, impartial, and deliberate considera- tion of all the evidence in the case. It does not mean a doubt based upon idle conjecture, mere supposition, or unwarranted spec- ulation. Evidence is deemed sufficient to exclude all reasonable doubt when it is of such a satisfying character as to convince the minds of ordinarily prudent and cautious persons with such de- gree of certainty that they would feel free to act upon the same without hesitation in their own most important personal affairs. If after a full, fair, and impartial consideration of all the evi- dence in the cause, you can say and feel that you are satisfied to a moral certainty of the truth of the charge, and have an abiding conviction of the guilt of the accused, you are then in that state of mind which the law recognizes as convinced beyond a reason- able doubt, and should not hesitate to return a verdict of guilty."

Instruction No. 4 was based on section 2168, Wilson's Rev. & Ann. St. 1903, which is as follows:

"(2168) § 249. A design to effect death is inferred from the fact of killing, unless the circumstances raise a reasonable doubt whether such design existed."

Instruction No. 8 was based on section 2189, which is as follows:

"(2189) § 270. Homicide is also justifiable when committed by any person in either of the following cases: First, when resist- ing any attempt to murder such person, or to commit any felony upon him or her, or upon or in any dwelling house in which such person is. Or, second, when committed in the lawful defense of such person, or of his or' her husband, wife, parent, child, master, mistress, or servant, when there is a reasonable ground to appre- hend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished. Or, third, when necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony commit- ted; or in lawfully suppressing any riot; or in lawfully keeping and preserving the peace."

Counsel insist that instruction 16 does not meet the require- ments or contain the essentials laid down by Chief Justice Wil- liams of our Supreme Court in the case of *Abbott v. Territory*, 1 Okla. Cr. 1, 94 Pac. 179. We think it does. The definition ap- proved by Justice Williams is:

"That state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jury in that condition that they cannot say they have an abiding conviction, to a moral certainty, of the charge."

It is also contended by counsel that there was error in the record on account of the failure of the court to tell the jury that the defense must be viewed from the defendant's standpoint, and that the jury was not instructed as to the law of self-defense. Instructions 9 and 10, in our opinion, meet the objection of counsel. They are as follows:

"No. 9. Where one is in a place he has a right to be, and is not the aggressor, and does not by his own wrongful conduct bring on the conflict which endangers his safety, and he is violently assaulted by another, or is, from the conduct and hostile actions of his antagonist, induced to believe that he is in imminent danger of losing his life or of receiving some great personal injury, he may lawfully resort to such force or violence as to him under all the circumstances seems reasonably necessary to protect himself from death or receiving some great bodily harm, even to the taking of the life of his assailant, if he in good faith from reasonable appearances believes such action necessary for his own safety; but one who by his own wrongful conduct brings on a fight, or who commences the combat, is not allowed this privilege of self-defense.

"No. 10. If at the time the defendant fired the fatal shot he had reasonable grounds to apprehend a design on the part of the deceased to take his life, or to do him some great personal injury, and that he was in imminent danger of such design being accomplished, and he fired such shot while laboring under such apprehensions, believing it necessary for his preservation or safety, then the firing of such shot, under such circumstances, was justifiable on the grounds of self-defense, and your verdict should be not guilty."

Counsel urge that the court erred in refusing to give the instructions requested by the defendant. Instruction No. 1, as requested by the defendant, was offered on the theory that the defendant had a right to kill Sheehan in order to stop the fight between Mattox and the deceased. This instruction was not proper. He had no such right under the law. It was not supported by any

evidence in the record. The defendant's testimony is to the effect that he shot in his necessary self-defense, and that the reason he fired the fatal shot was that the deceased, Sheehan, was pointing a pistol at him and had used threatening language, and that he believed the deceased, Sheehan, intended to shoot him. Instruction No. 2, requested, was as to the defendant's right to keep a gun in the saloon where the killing took place. The court properly held that it was immaterial as for what purpose he kept the gun there. If his testimony were true, he had a right to use the gun, regardless of the purpose for which it was kept, and the jury were the judges as to whether the testimony was true. Instruction No. 3, requested by the defendant, was on the same theory as instruction No. 1; that is, that the defendant had a right to keep the peace in his place of business and was authorized to take life if necessary to prevent a fight between Mattox and Sheehan. His right to keep the peace would not go to the extent of taking life; but the instruction was objectionable for the reason that his defense was not that he shot to keep the peace, but that he shot Sheehan to prevent his shooting defendant. Instruction No. 4, requested by defendant, was to the effect that the jury should not consider whether the defendant was justified in shooting at Luther Sheehan, a brother of deceased. The shooting at Luther Sheehan was part of the *res gestae,* and the jury had a right to consider that, together with the other circumstances in the case. Instruction 5, as requested by the defendant, was on the law of self-defense, and we think was properly refused for the reason that instructions 9 and 10 properly advised the jury as to defendant's right of self-defense.

Assignment 31 is that the court erred in allowing counsel for the territory of Oklahoma to indorse additional names on the indictment after said counsel had announced ready for trial, and after the jury had been impaneled. Section 5352, Wilson's Rev. & Ann. St. 1903, is as follows:

"(5352) § 216. When an indictment is found, the names of the witnesses examined before the grand jury must be indorsed thereon before the same is presented to the court, but a

failure to so indorse the said names shall not be sufficient reason for setting aside the indictment if the county attorney or prosecuting officer will within a reasonable time, to be fixed by the court, indorse the names of the witnesses for the prosecution on the indictment. The court or judge may, at any time, direct the names of additional witnesses for the prosecution to be indorsed on the indictment, and shall order that such names be furnished to the defendant or his counsel."

The record shows defendant's counsed had been served with a list of the names indorsed. It was not error for the court to permit this indorsement.

In disposing of the assignments which go to the action of the court in ruling on the admissibility of testimony, we deem it unnecessary to say more than, after a careful consideration, we are of opinion that no such error was committed as would entitle the defendant to a new trial. No evidence was admitted which would deprive him of any substantial right, and nothing was refused that could have possibly changed the result of the trial. Under the sentence of the lower court, the defendant was confined in the Kansas penitentiary at Lansing, Kan. The judgment will be modified, and the defendant confined in the state penitentiary at McAlester.

The judgment, as modified, as affirmed.

DOYLE, JUDGE, concurs.

———

FURMAN, PRESIDING JUDGE, (concurring). We do not desire to be understood as holding that instructions Nos. 9 and 10 are applicable to all cases, or that they would be approved under a different statement of facts. These instructions depend for their correctness upon the facts of the particular case in which they are given. A defendant may be the aggressor in a difficulty, or he may by his own wrongful act bring on a conflict, without entirely losing his right of self-defense. This would depend upon the character of the wrongful acts, and the intention with which they were done, which constituted such aggression or which brought on such conflict. If these things were done with a felonious inten-

tion, they would entirely destroy the right of self-defense; but, if they were done without a felonious intention, what is known as the imperfect right of self-defense might still exist.

Chief Justice Fuller of the Supreme Court of the United States, in *Wallace v. United States.* 162 U. S. 466, 16 Sup. Ct. 859, 40 L. Ed. 1039, correctly states the law governing this question as follows:

"When a difficulty is intentionally brought on for the purpose of killing the deceased, the fact of imminent danger to the accused constitutes no defense; but when the accused embarks in a quarrel with no felonious intent or malice or premeditated purpose of doing bodily harm or killing, and under a reasonable belief of imminent danger he inflicts a fatal wound, it is not murder."

Wharton, Hom., § 197; 2 Bishop, Crim. Law, §§ 712, 715; *State v. Partlow,* 90 Mo. 608, 4 S. W. 14, 59 Am. Rep. 31; *Adams v. People,* 47 Ill. 376; *State v. Hays,* 23 Mo. 287; *State v. McDonnell,* 32 Vt. 491; *Reed v. State.* 11 Tex. App. 509, 40 Am. Rep. 795.

From a full examination of the authorities, and upon reason, I think that it is clear that if a defendant is the aggressor in a difficulty, or if, by his own wrongful conduct, he brings about a conflict and then slays his adversary, the intention with which these things are done is material and vital to determine the degree of his guilt in the event his right of self-defense has been abridged. See: Bishop on Crim. Law, §§ 365, 367; *Yoes v. State,* 9 Ark. 43; *Hicks v. United States,* 150 U. S. 449, 14 Sup. Ct. 144; 37 L. Ed. 1137; *Bennington v. Commonwealth* (Ky.) 17 S. W. 272; *Thompson v. United States,* 155 U. S. 270, 15 Sup. Ct. 73, 39 L. Ed. 146; *White v. State,* 23 Tex. App. 164, 3 S. W. 710; *Shannon v. State,* 35 Tex. Cr. R. 2, 28 S. W. 688, 60 Am. St. Rep. 17; *Massie v. Commonwealth* (Ky.) 29 S. W. 871.

In the light of the testimony in this case, the failure of the trial court to instruct the jury upon this view of the law is not material, because, just after the difficulty began, the defendant had said: "If there is any fighting to be done, I will do it myself. I am the fastest fighting son of a bitch in this house."

This was testified to by several witnesses, and the defendant, when on the stand as a witness in his own behalf, did not deny it. So it is an admitted fact. The record shows that soon after this the defendant sent for a shotgun and ordered the shells loaded with large shot, and that he had this gun by his side behind the bar of the saloon, so there could be no question of his deadly intention. Therefore the instruction as given is applicable to the facts and free from serious objection. It would have been better if the court had given the instruction requested by counsel for the defendant, to the effect that the jury should view the facts and circumstances in evidence from the defendant's standpoint, and cases might arise in which it would be reversible error to refuse an instruction in this languege; but the instruction given means the same thing, and the facts are so clear and convincing of defendant's guilt that we cannot see how the defendant was injured by the instructions as given.

With this explanation, I concur in the opinion that there is no reversible error in this case, and that the judgment of the lower court should be affirmed.