## McNAMARA *v.* STATE.

Opinion Delivered April 13, 1895.

1. *Amendment of record—Misprision.*

> A clerical misprision in failing to record the verdict of a jury in a criminal case as rendered may be cured at any time during the term by a *nunc pro tunc* entry, which may be made in the defendant's absence.

2. *Murder—Intoxication—Specific intent.*

> It is not error, in a murder case, to refuse to instruct that if, at the time of the killing, "defendant was so under the influence of intoxicating liquor that a felonous intent could not be formed in his own mind, the jury should acquit," where there was no proof that such was the condition of defendant's mind.

3. *Criminal evidence—Deposition of absent witness.*

> On a trial for murder, the deposition of a witness who has since removed beyond the court's jurisdiction, taken before the coroner and reduced by him to writing, is admissible where defendant was, at the time it was taken, in custody before the coroner charged with the commission of the offense, had an opportunity to cross-examine the witness, and was legally called upon to do so, though he was not at the time represented by counsel.

Appeal from Pulaski Circuit Court.

ROBERT J. LEA, Judge.

*F. T. Vaughan* for appellant.

1. The jury failed to find the *degree* of murder. Sand. & H. Dig. sec. 2255; 26 Ark. 328; *Ib*. 534; 34 *id*. 649–652; 58 Ark. 239; 2 Thomp. Trials, 2633; 57 Ark. 267–9; 1 Bish. Cr. Pr. sec. 1005 a.

2. It was error to refuse instruction No. 6 asked by defendant. 34 Ark. 341; 54 *id*. 284.

3. It was error to admit the evidence of Wait and Guilfoil because (1) no proper foundation laid. (58 Ark. 369; *Ib*. 372); and (2) because incompetent. The defendant neither cross-examined them, nor was he represented by counsel. 29 Ark. 22; 33 *id*. 539; 37 *id*. 324–5; 40 *id*.

461 ; 47 *id.* 180 ; 58 *id.* 239 ; 1 Gr. Ev. 168 ; 7 A. & E. Enc. Law, p. 75 ; 1 Bish. Cr. Pr. (2 ed.) secs. 1090–3, 1098 ; Whart. Cr. Ev. secs. 227–9 ; 17 S. E. 856 ; 1 Rich. (S. C.) 124 ; 19 Ga. 402 ; 10 Bush (Ky.), 190.

4. Our statute settles the matter. Sand. & H. Dig. sec. 758 ; 1 Rich. (S. C.) 124 ; 19 Ga. 402 ; 6 Miss. 14 ; 1 Hawk. (N. C.) 344.

5. The minutes kept by a coroner are not competent evidence. 29 Ark. 142.

6. See further on the non-admissibility of such evidence : 5 Hill, 295 ; 92 Ga. 480 ; 10 Gratt. 722 ; 12 Bush, 271 ; 63 Miss. 450 ; 17 Ill. 426 ; 11 Fed. 34 ; 3 Rice, Ev. 350 ; Underhill, Ev. sec. 122 ; *Ib.* sec. 123 and note 5 ; 16 Col. 103.

*E. B. Kinsworthy*, Attorney General, for appellee.

1. The certiorari cures all objections to the form of the verdict.

2. On the subject of drunkenness the court followed substantially the doctrine in 34 Ark. 341, and 54 *id.* 284.

3. The evidence of Wait and Guilfoil was properly admitted. A proper foundation was laid. 29 Ark. 17 ; Underhill, Ev. sec. 124 and note 2 ; Whart. Cr. Ev. sec. 227 ; 33 Ark. 539 ; 47 *id.* 181 ; 58 *id.* 369 ; *Ib.* 240. This case falls clearly within the rule. 29 Ark. 22 ; 33 *id.* 539 ; 40 *id.* 461 ; 47 *id.* 180. See 1 Gr. Ev. sec. 163, and note 2 ; 1 Bish. New Cr. Pr. sec. 1195 ; 6 Tex. App. 319 ; 46 Cal. 45 ; 92 Ala. 41 ; 1 Starkey on Ev. 409, 410 ; 67 Ala. 55 ; 68 *id.* 52. When the evidence is written down by the coroner, as long as the written evidence is in existence, it is the proper testimony. 2 Ark. 229 ; 59 *id.* 50. Sec. 758 only refers to the admission of the statement of a *dead* witness. Where the evidence is taken down by the coroner, it can be read against any person who was present at the inquest. This does

not exclude the depositions of witnesses who are *not dead*.    33 Ark. 539 ; 58 *id*. 369.

WOOD J.,    Appellant was indicted for the crime of murder in the first degree.    He was convicted of murder in the second degree, and sentenced to imprisonment for twenty-one years in the State penitentiary.    His appeal presents the following questions :

1. Power of court to amend record.

1.    The clerk's entry upon the record of the verdict of the jury, as of the day when it was returned into court, was as follows:    "We, the jury, find the defendant guilty as charged in the indictment, and assess the punishment at twenty-one years' imprisonment in the State penitentiary.    Francis H. Conway, Foreman."    On the 29th day of January, 1895, long after the judgment had been entered, but at the same term, the court, upon motion of the prosecuting attorney, corrected the record entry of the verdict so as to make it read as follows :    "We, the jury, find the defendant guilty of murder in the second degree, and assess the punishment at twenty-one years' imprisonment in the State penitentiary.    Francis H. Conway, Foreman."    The court found that this was the true verdict, and ordered the clerk to correct the record so as to make it reflect the facts.    This proceeding was in the absence of the defendant.    The attorney general suggested a diminution of the record, after the appeal was granted by this court, and brought up by certiorari the record showing the correction made in the entry of the verdict, together with a true copy of the indictment with the verdict endorsed thereon.

The appellant contends that the form of the verdict, as disclosed by the original record entry, was fatally defective in not naming the degree of murder, and that the correction made at a subsequent day in the same term, showing the true form of the verdict, did not cure this defect, for the reason that the defendant was not present when the correction was made.

We need not decide whether the omission to name the degree is reversible error, because the corrected record shows that the verdict was in proper form.

The correction of the record so as to make it reflect the form of the verdict as it was actually rendered by the jury and indorsed by them upon the indictment, having been made during the same term at which the verdict was returned, was not such a substantive step as required the presence of the defendant. The decisions of our own court cited by counsel, showing that a *nunc pro tunc* entry amending the record cannot be made in the absence of the defendant, are not in conflict, and not in point, as in each case it will be found that the attempt to amend the record was at a subsequent term, or the question did not arise as to the presence of the defendant. In *Felker* v. *State*, 54 Ark. 490, the opinion does not state whether or not the *nunc pro tunc* entry supplying the omission was made at the same term the omission occurred. But an examination of the record of that case shows that the *nunc pro tunc* entry was made at a subsequent term.

Misprisions of the clerk or other officers may be corrected at any time, so as to make the record reflect the facts as they actually occurred when the parties to the record were present, and this may be done during the term without the presence of either party; for during the term, it is said, the proceedings which were had in a case are "*in fieri*," the record remains "in the breast of the judges of the court, and in their remembrance, and is subject to such amendment or alteration as they may direct." Black on Judgment, sec. 153. If any amendment is made in the record, however, even during the term, which affects the substantial rights of the prisoner, or reaches to the merits of his case, then he should be present. But here was a mere clerical misprision, arising from the inadvertence of the clerk in not recording the verdict as it was actually rendered in court,

and when he was present and heard it read. It was the duty of the clerk to enter up the verdict in the words in which it was rendered, as they appear endorsed upon the indictment. The defendant could in no manner controvert or change the indorsement of the verdict upon the indictment. There was nothing for him to do or suggest in the case. 1 Bish. New Crim. Pro. sec. 269. The entering it upon the record was clerical and formal. He could not claim the right to be present when the clerk entered it upon the record, nor when the judge read it, or had it read for his approval. And there is no more sense in saying that he had to be present when the clerk was made to correct it to conform to the truth. He was present when it was returned into court and read, and when the judgment of sentence was pronounced upon it.

A very different rule obtains after the close of the term. Then it is beyond the power of the court to "amend in any matter of substance or in any matter affecting the merits." Unless the cause is still depending, and the parties are in court, the power of courts, after the close of the term, is confined to the correction of the mistakes or oversights of officers, clerical misprisions, and, as a general rule, to make the record reflect only the truth of what was actually done in court. In all cases of this kind, the parties affected are entitled to notice. The prisoner must be present, because at the close of the term the proceedings are no longer *in fieri;* they become final. The prisoner has the right to expect that his case will be presented to the appellate tribunal upon the record as it passed from under the hand of the trial judge at the close of the term. Therefore any alteration affecting his rights, of which the record is susceptible, must be made in his presence.

2.  The evidence fully sustains the verdict for murder in the second degree.

3. The court did not err in refusing to instruct the jury that "they should consider the mental condition of the defendant at the time of the shooting, and if they believe that, at the time, the defendant was so under the influence of intoxicating liquor that a felonious intent could not be formed in his own mind, the jury should acquit. The burden of proof to show such a mental condition is upon the defendant."

2. Abstract instruction properly refused.

There was not a particle of proof upon which to base this instruction; for, although other witnesses and the defendant himself testified that the defendant had been drinking freely that day prior to the killing, yet there was no proof to justify the court in submitting to the jury to determine whether the condition of the defendant's mind from excessive drink was such as to render him incapable of forming the specific intent to take life. The defendant, on the contrary, testified that he knew "what was going on that day, and at night, too." This was necessary to the theory of self-defense, which he was seeking by his own evidence to maintain, but it was incompatible with the theory of dipsomania presented by the instruction. From the witness stand the defendant was taking a calm retrospect of the occurrences of that eventful day, and the minuteness of detail upon which he entered in reviewing them shows him to have been in the possession of his faculties. He was doubtless the best judge of his own thoughts, and his positive assertions that he knew "*what he was doing*," in the absence of evidence of intoxication to the extent of temporary or partial dementia, would have warranted the court in withholding any instruction whatever upon the defendant's inability to form an intent to kill. But the instruction which the court did give was substantially correct in a charge of murder in the first degree, since an actual intent to take life is not an essential

element in the crime of murder in the second degree.*
*Brassfield* v. *State*, 55 Ark. 556 ; *Wood* v. *State*, 34 Ark.
341 ; 1 Bish. Cr. Law, sec. 401.

3. Admissibility of deposition taken before coroner.

4. The last ground urged for reversal is the introduction of the "testimony of Billie Guilfoil, taken before the coroner's jury, when the defendant, though present, was not represented by counsel, nor did the defendant cross-examine the witness." There is nothing in this assignment to warrant a reversal. Mr. Greenleaf says: "The chief reasons for the exclusion of hearsay evidence are the want of the sanction of an oath and of any opportunity to cross-examine the witness. But where the testimony was given under oath, in a judicial proceeding, in which the adverse litigant was a party, and where he had the power to cross-examine, and was legally called upon to do so, the great and ordinary test of truth being no longer wanting, the testimony so given is admitted, after the decease of the witness, in any subsequent suit between the same parties. It is also received if the witness, though not dead, is out of the

---

*Note.—The instruction of the court referred to above was in the following language: "Voluntary drunkenness is not an excuse for crime, except such crimes as require a specific intent to constitute them. To constitute murder in the first degree, there must have been premeditation and deliberation, and a specific intent to take life at the time of the killing, and it is competent for the defendant to show that, by reason of drunkenness, he did not, at the time of killing, possess that condition of mind which is necessary to the commission of the crime of murder in the first degree. If you find from the evidence that the defendant was not justifiable in the killing, then, whether the offense committed was murder in the first degree, or a lower degree of homicide, depends upon all the circumstances, and particularly upon the defendant's state of mind at the time of the killing, and whether he knew what he was doing, and that it was wrong. You may consider the fact of drunkenness in determining the intent with which the act was done, and the degree of the crime; and if he was so drunk as to be unable to form a specific intent to kill, or by reason of drunkenness was incapable of premeditation and deliberation, as defined in the instructions in this case, he is not guilty of murder in the first degree."

jurisdiction, or cannot be found after diligent search, or is insane, or sick and unable to testify, or has been summoned, but appears to have been kept away by the adverse party." 1 Greenleaf, Ev. sec. 163. This rule has never been changed by statute in this State, and, whatever rule may have been approved in other States, our own court has recognized the doctrine, as thus announced by Mr. Greenleaf, in such phases of it as it has had occasion to pass upon. See *Hurley* v. *State*, 29 Ark. 22; *Shackelford* v. *State*, 33 *id.* 539; *Griffith* v. *State*, 37 *id.* 324; *Dolan* v. *State*, 40 *id.* 461; *Sneed* v. *State*, 47 *id.* 180; *Carpenter* v. *State*, 58 Ark. 239, and *Vaughan* v. *State*, 58 Ark. 353. This rule in no sense has ever been regarded by our court as obnoxious to the constitutional right of the defendant to be *confronted* with the witnesses against him.

The trial court required every exaction of the above rule to be fully met as preliminary to the introduction of the testimony of Guilfoil taken before the coroner. It was shown that the defendant was in custody before the coroner sitting as a committing court to ascertain whether the defendant was the party who did the killing. It was a judicial proceeding. The witness was under oath, and the substance of his testimony was reduced to writing by the coroner, and, while the record does not show that the testimony was read to and signed by the witness, appellant made no objection in the court below, and has urged none here on that account, presumably for the reason that this was done. The defendant had the power to cross-examine, was notified by the coroner of his right, *and was legally called upon to do so*. If he did not choose to avail himself of the opportunity, it does not lie within his mouth to complain. A subpœna and attachment had been in the hands of officers who "had made every effort to find him, and were informed by those who knew him that he was out of the State."

Testimony taken before a coroner in the manner above indicated is admissible, under the rule announced by Mr. Greenleaf, *supra*, and approved by this court. Sand. & H. Dig. sec. 758; see also Cooley, Const. Lim. 387. Sec. 758, Sand. & H. Dig., does not abrogate the common law rule for the introduction of the testimony of a witness given in a judicial proceeding, etc., where the witness is beyond the jurisdiction of the court, or upon diligent inquiry cannot be found, or is sick and unable to attend, or insane, or is kept away by the adverse party. It did not pretend to cover the whole subject. There is nothing in it conflicting with the rule admitting the testimony of the class not mentioned. It only mentions what shall be evidence in case of the witness' *death*. Moreover, it provides: "In case of the death of the witness, his deposition shall be evidence on the trial *of any person present, etc.*" Unless "any person present" shall be construed to mean any person who is present charged with commission of the offense, having the opportunity and legally called upon to cross-examine, we are clearly of the opinion that the section in that respect is unconstitutional; for, those present, not charged or placed in the attitude of defendants, have not the right of confronting the witnesses against them, in the sense contemplated by the constitution. Const. Ark. art. 2, sec. 10. However, it is immaterial, according to the views we have expressed, whether the section is unconstitutional or not in the particulars mentioned. The defendant did not ask to be represented by counsel, and hence was deprived of no right in that regard. The record presents no errors.

Affirm the judgment.