RODGERS *v*. STATE.

4395                                        189 S. W. 2d 608

Opinion delivered October 1, 1945.

38

*Bon McCourtney* and *Claude B. Brinton,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

ROBINS, J. Charged in information filed by the prosecuting attorney with the offense of murder in the first degree alleged to have been committed by unlawfully shooting to death Edward Howard, appellant was by a jury found guilty of murder in the second degree and his punishment was fixed at confinement in the penitentiary for twenty-one years. From judgment in accordance with the verdict appellant prosecutes this appeal.

For some time prior to the killing, appellant had been operating a poker game at his residence in Paragould. He testified that he was unable to work on account of being afflicted with tuberculosis, and was running the poker game in order to make a living. On the afternoon of August 12, 1944, Edward Howard, aged 23, married, employed in a defense plant, was one of appellant's patrons. Howard lost eleven dollars and complained that he had been cheated by the use of marked cards. He demanded that appellant give him his money back. Appellant protested that others in the game had won Howard's money, and offered to prove that the cards were not marked. After Howard had threatened appellant, Wilkerson, another of appellant's patrons,

intervened and was struck on the head by a club in the hands of Howard. Wilkerson finally overcame Howard, threw him to the ground and held him until Howard promised to go home. Upon being released by Wilkerson Howard left appellant's premises. About sundown of the same day Howard and appellant met near the intersection of King's Highway and Pekin Street in Paragould. Appellant testified that he was going to town to get some medicine for his wife, who had become nervous as a result of the row over the poker game, and that he armed himself with a pistol because of Howard's threats and because he (appellant) was not physically able to resist the apprehended attack by Howard. According to witnesses for the State, no words were exchanged between Howard and appellant. It is undisputed that Howard was unarmed. When Howard was within about five feet of appellant, appellant began firing at him, at least four shots taking effect in Howard's body. Some witnesses for the State testified that appellant shot Howard twice after he fell. Appellant testified that immediately before the shooting Howard, with his right hand in his pocket, again demanded repayment of his losses in the poker game, saying: "I want my eleven dollars back or here's where it begins." Appellant further testified: "He kept coming and when he got within five feet of me I shot him. After I shot the first shot I guess I lost my head . . . He didn't make any effort to get his hand out of his pocket and didn't pull any weapon." Appellant also stated on the witness stand that he feared an attack by Howard would bring on a hemorrhage with fatal results to appellant and that he fired at Howard for this reason. Several witnesses testified as to threats made by Howard against appellant, and there was some corroboration of appellant's version of the fatal encounter.

For reversal of the judgment of the lower court, appellant urges here: (I) That the lower court erred in refusing to give appellant's requested instruction No. 1; and (II) that the lower court erred in permitting introduction of a transcript of testimony given by Willis

Carpenter at the preliminary hearing of appellant before a justice of the peace.

## I.

Appellant's requested instruction No. 1 was: "You are instructed by the court that if you find from the evidence threats by the deceased to the defendant were communicated to the defendant, and if you further find that the defendant believed those threats and believed and anticipated because of his weakened physical condition and the superior physical condition of the deceased that he would receive great bodily harm from the deceased, even though no weapons were used by the deceased, you are instructed that the defendant had a right to arm himself and could act with less provocation in order to repel the assault and prevent the deceased from taking his life or doing him great bodily harm with his fist."

It was not error to refuse to give the instruction in this form. Appellant did not have a right (because of fear arising from his weakened physical condition and the superior strength of his adversary) "to arm himself" and to "act with less provocation."

By § 3508 of Pope's Digest of the laws of Arkansas the carrying of a pistol as a weapon (except by an officer making an arrest or by a person on a journey) is forbidden. The statute makes no exception in favor of one who is physically disabled. Under the law, a man weakened by disease has no more right to carry a pistol as a weapon than does a healthy person. And while it might appear necessary for a person so disabled to resort to use of a weapon in necessary self-defense sooner than such a necessity would present itself to a person of ordinary strength, it cannot properly be said that the person under disability would have a right to shoot another "with less provocation."

## II.

By § 3746 of Pope's Digest it is provided: "The magistrate, in the minutes of the examination, shall state

the name and place of residence of each witness, and shall make a general statement of the substance of what was proved and file the same with the proceedings." Section 3755 is as follows: "The magistrate shall in ten days, and before the commencement of the next term of the court to which the defendant is sent for trial, deliver to the clerk of such court the warrant, if any; the minutes of the examination, including the statement of the witnesses; the instruments of writing and other things used in evidence; the decision and action of the magistrate; the bail-bond, if any; and the recognizance of the witnesses."

Section 14 of Initiated Act No. 3, adopted November 3, 1936 (Acts of 1937, p. 1390), thus authorizes the use of the testimony of an absent witness: "On the trial of any cause, civil or criminal, the properly authenticated transcript of the testimony of any witness, or other evidence of the testimony of any witness when properly proved, which testimony was given in any court at any former trial or examination of the same cause between the same parties or their privies, may be read or admitted in evidence, when the former witness is dead, beyond the jurisdiction of the court, has become insane since the former trial or examination, or when for any reason the former witness may not be available, and also in all cases in which for any reason a former witness refuses to testify concerning the matters as to which he formerly testified. But no such transcript of testimony, nor proof of such testimony, may be admitted on behalf of either party in a criminal case unless it is first shown that the party against whom it is sought to be used was present, in person or by attorney, at the former trial or examination and there had the opportunity to examine or cross-examine the witness whose testimony or the transcript of whose testimony is offered in evidence."

Appellant objected to the reading of transcript of Carpenter's testimony on the ground that proper foundation for introducing same had not been laid. A deputy sheriff testified that a subpoena to obtain the attendance

of Carpenter as a witness had been issued, but that he was unable to serve it because Carpenter was in California.

In the case of *Shackleford* v. *State*, 33 Ark. 539, decided before the use of the testimony of an absent witness had been expressly authorized by statute, the State was permitted by the circuit court to introduce as a witness the justice of the peace before whom Shackleford's preliminary examination was held and to prove by the justice of the peace the substance of damaging testimony given against the accused at the preliminary examination by a witness who had afterwards disappeared from the community and could not be found at the time of the trial. This court held that there was no error in permitting the introduction of the testimony of the justice of the peace, and cited in support of its decision the case of *Hurley* v. *State*, 29 Ark. 17, where it was held that admission of such testimony did not violate the right of the accused to be confronted with the witnesses against him, because the accused was present at the preliminary examination and had a right to cross-examine the witness whose testimony was the subject of controversy.

A question somewhat similar to the one raised here was thus disposed of by this court in the case of *Rogers* v. *State*, 136 Ark. 161, 206 S. W. 152, also decided before the adoption of the Initiated Act of 1936, *supra*: "The court did not err in permitting the transcript of the testimony of Cora Critz at a former trial of the cause to be read in evidence. The official court stenographer duly authenticated the testimony as that of Cora Critz, taken down in shorthand at the former trial after the witness was duly sworn and when appellant and his counsel were present and had an opportunity to cross-examine the witness. He stated that the testimony so taken was correctly transcribed. A witness, who was personally well-acquainted with Cora Critz, testified that, after the death of her son, she stated that she was going to Texas. She left and had not returned, so far as the witness knew. Two subpoenas for Cora Critz had been issued and were returned *non est*. The returns re-

cited that the sheriff had made diligent search for the witness and had been unable to find her in Pulaski county, and that her whereabouts were unknown. The proper foundation was laid for the introduction of the secondary evidence and the ruling of the court in admitting it was correct. *Hurley* v. *State,* 29 Ark. 17; *Kelley* v. *State,* 133 Ark. 261, 202 S. W. 49; *Shackleford* v. *State,* 33 Ark. 539; *McNamara* v. *State,* 60 Ark. 400, 30 S. W. 762; *Vaughan* v. *State,* 58 Ark. 353, 24 S. W. 885; *Wimberly* v. *State,* 90 Ark. 514, 119 S. W. 668; *Poe* v. *State,* 95 Ark. 172, 129 S. W. 292.''

This court, in the case of *Walls* v. *State,* 194 Ark. 578, 109 S. W. 2d 143, decided after the adoption of the Initiated Act of 1936, held admissible transcript of the testimony of the principal witness for the State, given at the preliminary examination, upon a showing of the absence of the witness from the state, and, after reviewing previous decisions, said: ''If Initiated Act No. 3, 1936, had never been adopted, still the secondary evidence in this case would have been proper, as this court has frequently held.''

It appears from the record in this case that appellant was represented by counsel at the preliminary hearing, and the cross-examination of Carpenter by appellant's attorney is shown in the transcript of Carpenter's testimony that was read to the jury. While this transcript was not identified by the justice of the peace, or by the circuit court clerk, with whom it should have been filed, its introduction was not objected to on this ground; and it was identified by the young lady who took down Carpenter's testimony in shorthand and transcribed it on the typewriter. She also testified that the witnesses were duly sworn by the magistrate. There is no contention by appellant that Carpenter was not a witness at the preliminary hearing or that his testimony was not properly shown in the transcript read in the trial court. Appellant did not refute in any way the showing made by the State to the effect that Carpenter was out of the jurisdiction of the court. Under these

circumstances it was not error to permit this transcript to be read to the jury.

Other errors, not complained of here, were set up in appellant's motion for new trial. We have examined the record as to these contentions, and find no merit in any of them. There was substantial evidence to support the verdict of the jury, not only as to guilt of appellant, but also as to the degree of homicide of which he was found guilty. The judgment of the lower court is, accordingly, affirmed.